IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARYJO COHEN, FREDERIC J. FRANSEN, and
EMANUEL J. KALLINA, II,
in their capacities as trustees of the Melvin S. Cohen
Trust for the Minneapolis Federation for Jewish Service,

                                  Plaintiffs,

    v.

THE MINNEAPOLIS JEWISH FEDERATION,

                                  Defendant.

OPINION & ORDER

16-cv-325-jdp

---

       This case arises from a dispute between the trustees and the beneficiary of a charitable trust. Plaintiffs Maryjo Cohen, Frederic J. Fransen, and Emanuel J. Kallina, II, trustees of the Melvin S. Cohen Trust for the Minneapolis Federation for Jewish Service, filed suit against the Trust's sole beneficiary, the Minneapolis Jewish Federation, to modify the Trust. The Federation has filed counterclaims alleging, among other things, that the trustees have breached their duty to the Trust and that the trustees' attempted modification would subvert the purpose of the Trust and must be stopped.

       The Federation has moved for an order prohibiting payment of the trustees' litigation expenses from Trust funds, pursuant to Wis. Stat. § 701.1004(3)(c)(1). Dkt. 27. The Federation also asks the court to order the trustees to return to the Trust the funds that they have used to pay their legal expenses to date, and to award the Federation its attorney fees and costs incurred in bringing this motion. The court will grant the Federation's motion to prohibit payment. But the court will not award the Federation its fees and costs in bringing this motion. The court will defer all decisions about who will bear the expense of this litigation until the case is decided on the merits.

BACKGROUND

The court draws the following facts from the operative pleadings, Dkt. 26 and Dkt. 31, and the parties' evidentiary submissions. The parties' rights and powers under the Trust documents are sharply disputed; because the court will not reach the merits of any claims in this opinion, it will keep the factual summary relatively brief.

In 1980, the Melvin S. Cohen Foundation, Inc., established the Melvin S. Cohen Trust for the Minneapolis Federation for Jewish Service, to "operate[] in connection with" that organization, whose name was later changed to the Minneapolis Jewish Federation. Dkt. 30-3, at 2. The foundation—the Trust settlor—established the Trust "exclusively for charitable, education and religious purposes, which shall be accomplished by making distributions which exclusively benefit or carry out the charitable, education and religious purposes of the Federation." *Id.* at 1. The Federation is a Minnesota non-profit corporation created under § 501(c)(3) of the Internal Revenue Code.

Article IV of the original Trust Agreement from 1980, Dkt. 30-3, titled "Use of Trust Fund," governs the Trust's annual distribution to the Federation. The Trust's net income "shall exclusively benefit or carry out the charitable, education and religious purposes of the Federation." *Id.* at 3. The trustees are to maintain a "close working relationship with the Federation" and "shall consult at least annually with the Federation to obtain information concerning its operating budgets, proposed grant programs, recommendations of the Federation for use of the trust's income, and reports of uses to which previous distributions were applied." *Id.* The trustees may "designate in writing to the Federation their selection of a particular function, activity, or grant program of the Federation, for the benefit of which the trust's annual distribution, or any designated portion of it, shall be applied." *Id.* If the

trustees do not designate a particular use for a distribution, the Federation may treat the distribution as an "unrestricted gift." *Id.* at 3-4.

According to the trustees, each November from 1981 to 2014, the trustees determined the Trust's annual distributions to "certain designated beneficiaries" through the Federation. Dkt. 38, ¶ 4. The trustees determined how to use the annual distribution, and each year, the Federation honored those designations.

On November 30, 2015, the Federation received a letter from one of the trustees, Cohen, with a check for that year's distribution. The letter listed the trustees' chosen beneficiaries and how much money the Federation should distribute to each. Two distributions were to be made "at the request of" or "on behalf of" one of the trustees. Dkt. 30-4, at 1-2. And the vast majority of the annual distribution was to go to Donors Trust, Inc., for the Jewish Education and Support Fund. *Id.* at 1. Stu Silberman, the Federation's chief executive officer, believed that a number of the trustees' designated distributions were not "consistent with the Federation's mission," and he indicated that the Federation would distribute the funds as it saw fit. Dkt. 30-7, at 1. A series of letters between the trustees and the Federation followed: Cohen was "shocked" that the Federation balked at making a number of the distributions, and Silberman emphasized that distributions must support a "function, activity, or grant program" of the Federation. *Id.* at 2-17. Silberman believed that the trustees did not have the right to require the Federation to distribute funds to specific beneficiaries, and he asked to meet with the trustees to discuss the issue. Cohen did not believe a meeting was necessary.

This back-and-forth went on for some time. Finally, on April 19, 2016, Federation representatives and the trustees met to discuss the Trust, the Trust Agreement, and

distribution designations. Silberman, Tom Sanders (a Federation board member), and Jerry Ribnick (a former Federation president) attended on behalf of the Federation. For now, it suffices to say that the parties reached an impasse regarding the meaning of certain aspects of the Trust Agreement.

Months before the April meeting, the trustees amended the Trust Agreement. The trustees did not mention the Amended Trust Agreement, Dkt. 30-8, at the April meeting. The amendments revised the "function, activity or grant program" language to allow designations to specific "donee charities" selected by the trustees.

Following the April 19 impasse, the Trust filed suit in state court to modify the Trust to replace the Federation as the beneficiary; to compel the Federation to transfer the Trust's 2015 distribution to the substituted beneficiaries; and to have the court declare that the Amended Trust Agreement is valid and operative. The Federation removed the case to this court and filed a third-party complaint against the trustees. Dkt. 6. The parties stipulated to the substitution of the trustees as plaintiffs, and the Trust was dismissed from the case. Dkt. 19 and Dkt. 21. The Federation denies the allegations of the complaint, opposes modification of the Trust, and contends that the trustees have breached their duties to the Trust in multiple ways.

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332: the parties are completely diverse, and the amount in controversy exceeds $75,000.

ANALYSIS

By the terms of the Trust Agreement, the Trust is governed by the law of Wisconsin,[1] which has recently enacted a version of the Uniform Trust Code. Under Wisconsin law, attorney fees and costs associated with litigation involving a trust's administration may be paid with trust funds, without prior approval or court authorization. Wis. Stat. § 701.1004(3)(a). That is, unless the court with jurisdiction over the case orders otherwise. *Id.* A party may move to prohibit a trustee from paying litigation fees or costs with trust funds "[i]f a claim or defense based upon breach of trust is made against [the] trustee." § 701.1004(3)(c)1. If the moving party demonstrates that there is a reasonable basis to believe that a breach of trust occurred, "the court shall enter an order prohibiting the payment of further attorney fees and costs from trust property and shall order attorney fees or costs previously paid from trust property in such proceeding to be refunded, unless the court finds good cause to allow attorney fees and costs to be paid from the trust." § 701.1004(3)(c)2.

But before applying the statute, the court must determine whether the Trust documents speak to this issue. *See* § 701.0105(1) ("*Except as otherwise provided in the terms of the trust*, this chapter governs the duties and powers of trustees, directing parties, and trust protectors; relations among trustees, directing parties, and trust protectors; and the rights and interests of beneficiaries." (emphasis added)). The trustees contend that the Trust Agreement explicitly allows them to pay attorney fees and costs with Trust funds, and, as a result, it supersedes the statute. The trustees direct the court to Article VI, section (e) of the Trust

---

[1] The Trust Agreement provides that "[t]his agreement is executed and delivered in the State of Wisconsin, the situs shall be in that state, and it shall be governed by, and construed and administered in accordance with the laws of that state." Dkt. 30-3, at 10.

5

Agreement, which provides that the trustees have the power "[t]o pay all administration expenses of this trust . . . to commence or defend suits or legal proceedings, and to represent this trust in all suits or legal proceedings." Dkt. 30-3, at 5.[2]

This section does not expressly authorize the payment of litigation expenses, but it does authorize the trustees to represent the Trust in all suits or proceedings. So it would be reasonable to interpret this section to allow the payment of litigation expenses for suits by or against the Trust itself. But that is an entirely different matter than a suit against a trustee. It would not be a reasonable to read this section to allow a faithless trustee to use Trust assets to pay for the defense of a meritorious allegation that the trustee had breached his or her duties to the Trust. This section does not afford such blanket indemnification. The Trust Agreement also provides that "all expenses of this trust or of any Trustee acting hereunder shall be paid by the Trustees from the trust fund." *Id.* at 8.[3] But this provision does not afford blanket indemnification either, because a faithless trustee is not acting under the Trust Agreement.

The court concludes that there is no language in the Trust Agreement that conflicts with § 701.1004, so that statutory section controls.

### A. Reasonable basis

Under § 701.1004, the Federation must demonstrate that there is a reasonable basis to believe that a breach of trust occurred. The Federation contends that the trustees breached

---

[2] Although the status of the Amended Trust Agreement is disputed, Article VI, section (f) of the Amended Trust Agreement is nearly identical: "[t]o pay all administration expenses of this trust . . . to commence or defend suits or legal proceedings, and to represent this trust in all suits or legal proceedings. Trust assets shall be used to make such payments." Dkt. 30-8, at 5.

[3] Article VIII of the Amended Trust Agreement is identical. Dkt. 30-8, at 6.

the Trust Agreement in nine ways, *see* Dkt. 28, at 16-18, including by attempting to designate specific beneficiaries, by attempting to designate funds for the trustees' personal benefit, by attempting to designate funds to Donors Trust, Inc., by "deceiving" the Federation at the April 19 meeting by concealing the fact that the trustees had amended the Trust Agreement, and by attempting to amend the Trust Agreement to benefit the trustees and to remove the Federation as the beneficiary.

The court cannot, and need not, resolve the merits of the case on the basis of the record now before the court. But the court concludes that the Federation has at least a reasonable basis for its allegation that the trustees have breached their duty to the Trust by seeking to remove the Federation as the beneficiary and supported organization. The original 1980 Trust was established to accomplish beneficent purposes "by making distributions which exclusively benefit or carry out the charitable, education and religious purpose of the Federation." The trustees may ultimately be able to show that the Federation has become so radically secular since 1980 that the Trust must be modified to effectuate the intent of the settlor to benefit Jewish charity. But that will take a substantial showing that the trustees have not yet made.

## B. Good cause

So it falls to the trustees to show good cause to allow them to pay their litigation expenses with Trust funds. Here, the trustees simply reargue that the Trust Agreement allows them to use Trust funds. And, so the trustees argue, the parties' other claims are inextricably intertwined with the breach of trust claims, so the court should permit payment of all litigation expenses with Trust funds.

7

The court agrees that the claims of the trustees are inextricably intertwined with the counterclaims of the Federation. But this does not help the trustees. The overarching question here is whether the parties' actions are consistent with the Trust. If the Federation prevails, all the trustees' actions, including the filing of the original suit in the name of the Trust, will be part of the same breach of their duties as trustees. The trustees will prevail if they can show that the Federation is no longer a proper beneficiary for the Trust, or that it has not followed the designation procedures under the Trust. If that happens, the court would allow the Trust to pay the expense of this litigation. But at this point, the trustees have not made a showing that suggests that that outcome is likely. And it will be easier to ensure ultimate payment to the proper parties if the expenses of the litigation remain in the Trust, rather than trying to claw the fees back from the trustees or their lawyers.

The trustees do not contend that they will be unable to press their claims or to mount a defense to the counterclaims without access to the Trust's assets. The court concludes that the trustees have not shown good cause to allow them to pay fees and costs associated with this litigation with Trust funds.

## C. The Federation's attorney fees and costs

Finally, the Federation asks the court to award it its fees and costs incurred in bringing this motion. It contends that the trustees intentionally violated § 701.1004 and used Trust funds without properly notifying the Federation.

"If a claim or defense based upon a breach of trust is made against a trustee . . . the trustee shall provide notice to each qualified beneficiary . . . of the trustee's intention to pay costs or attorney fees incurred in the proceeding from the trust prior to making payment."

Wis. Stat. § 701.1004(3)(b). The notice should inform the beneficiary of its right to move to prohibit payment with trust property. *Id.*

At this point, it appears that the trustees complied with this notice requirement, though perhaps belatedly. On August 16, 2016, Cohen sent Silberman a letter informing the Federation that the trustees intended to pay for this litigation with Trust funds. Dkt. 30-9. Cohen explicitly notified the Federation that it had the right to move the court for an order prohibiting the trustees from paying attorney fees and costs with Trust funds.

The trustees have not paid any fees or costs attributable to defending the breach of trust claims with Trust funds. The original complaint was filed in the name of the *Trust,* as opposed to the trustees. At that time, the case did not, on its face, involve breach of trust claims. As soon as the Federation filed counterclaims against the Trust and a third-party complaint against the trustees, the trustees retained separate counsel; Ruder Ware remained counsel for the Trust. After the parties determined that the Trust was not a proper party in this case, Dkt. 19, the court dismissed the Trust from the case, Dkt. 21, and Ruder Ware concluded its involvement. The trustees paid Ruder Ware in full with Trust funds, "for the work . . . performed in preparing the Trust's original Complaint against [the Federation] and for work performed up to the filing of the Counterclaims against the Trustees." Dkt. 43, ¶ 12. Ruder Ware indicates that it does not intend to seek compensation for its work preparing a motion to dismiss after that date. *Id.* Paying Ruder Ware with Trust funds does not, on its face, violate § 701.1004. The court will not at this point order the trustees to return any funds to the Trust.

The court will deny the Federation's request for fees and costs at this point. However, the court will revisit the issue of fees and costs once the case is decided on the merits.

## ORDER

IT IS ORDERED that defendant the Minneapolis Jewish Federation's motion for an order prohibiting payment of plaintiffs' litigation expenses from Trust funds, Dkt. 27, is GRANTED in part and DENIED in part. Plaintiffs Maryjo Cohen, Frederic J. Fransen, and Emanuel J. Kallina, II, may not use Trust funds to pay fees and costs associated with this litigation. The Federation's request for its fees and costs associated with bringing this motion is denied at this point without prejudice.

Entered January 11, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge