IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MARYJO COHEN, FREDERIC J. FRANSEN, and
EMANUEL J. KALLINA, II,
in their capacities as trustees of the Melvin S. Cohen
Trust for the Minneapolis Federation for Jewish Service,

               Plaintiffs,

      v.

THE MINNEAPOLIS JEWISH FEDERATION,

               Defendant.

OPINION & ORDER

16-cv-325-jdp

---

This case arises from a dispute between the trustees and the beneficiary of a charitable trust. Plaintiffs Maryjo Cohen, Frederic J. Fransen, and Emanuel J. Kallina, II, trustees of the Melvin S. Cohen Trust for the Minneapolis Federation for Jewish Service, filed suit against the Trust's sole beneficiary, the Minneapolis Jewish Federation, to modify the Trust. The Federation has filed counterclaims alleging, among other things, that the trustees have breached their duty to the Trust and that the trustees' attempted modification would subvert the purpose of the Trust and must be stopped.

Two motions are before the court. First, the Federation has moved to dismiss the trustees' fifth cause of action, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 72. The court will deny this motion for the most part. Second, the Federation moves to compel communications between the Trust and one of its law firms, Kallina and Associates, LLC. Dkt. 49. The court will grant this motion in part, requiring plaintiffs to produce the law firm's unredacted invoices.

ALLEGATIONS OF FACT

The court draws the following facts from the operative pleadings. Dkt. 67 and Dkt. 68. The parties' rights and powers under the Trust documents are sharply disputed; because the Federation's motion to dismiss concerns only one claim, the court will keep the factual summary relatively brief.[1]

In 1980, the Melvin S. Cohen Foundation, Inc., and three individuals set up the Melvin S. Cohen Trust for the Minneapolis Federation for Jewish Service (now known as the Minneapolis Jewish Federation). The Trust distributed funds to the Federation to "exclusively benefit or carry out the charitable, educational and religious purposes of the Federation." Dkt. 68, ¶ 14. All agree that in the beginning, the Trust's and the Federation's interests were aligned: both "intended to benefit the Jewish community on a local, regional, national, and worldwide basis." *Id.* ¶ 15. The entities worked in harmony for decades: the trustees trusted the Federation to distribute Trust funds to appropriate donees to further agreed-upon charitable interests. For years, "the [t]rustees believed that all of the requested distributions were made by the Federation." *Id.* ¶ 21.

But the relationship between the trustees and the Federation has soured in recent years. What exactly happened depends on who you ask. According to the trustees, the Federation moved away from Jewish-community interests and began emphasizing "general charitable" and "non-Jewish causes." *Id.* ¶ 22. The Federation began to refuse to make donations to Jewish charities the trustees selected. The trustees "had always controlled where its grants went, and how its assets were invested." *Id.* ¶ 36. So the trustees would like to

---

[1] For additional factual background, see the court's January 11, 2017 opinion and order. Dkt. 44.

replace the Federation and to redirect the Trust's annual distributions to "new supported organizations," including Donors Trust, the National Community Foundation, and "other organizations that are committed to honoring [the Cohen Foundation's] donative intent." *Id.* ¶ 39. The trustees bring various claims against the Federation regarding its failure to distribute Trust funds as directed, and they ask the court to modify the Trust due to the Federation's "substantial failure . . . in regard to its role as a supported organization." *Id.* ¶ 50.

But according to the Federation, it is the trustees who have altered their priorities. The trustees have engaged in self-dealing and have attempted to divert funds away from the Federation to serve their own organizations and ideological agendas. According to the Federation, the trustees "intend to convert the Charitable Trust to a private foundation, take the funds of the Charitable Trust away from the Federation, and use those benefits for their own purpose." Dkt. 67, ¶ 29. The Federation alleges, among other things, that the trustees have breached their fiduciary duties to the Federation.

MOTION TO DISMISS

A motion to dismiss pursuant to Rule 12(b)(6) tests the complaint's legal sufficiency. To state a claim upon which relief can be granted, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

The Federation moves to dismiss the trustees' "breach of duty" claim. Dkt. 68, ¶¶ 64-74 (count five). The trustees allege that the Federation had duties of loyalty, care, and obedience to disburse Trust funds as instructed. The Federation breached those duties when it "misused, misappropriated, and otherwise failed . . . to faithfully follow the Trust's annual distribution instructions and restrictions." *Id.* ¶ 68. The Federation assumes that it owed the trustees the fiduciary duties alleged. Dkt. 73, at 2 n.2 ("In responding here based on the statute of limitations, the Federation does not concede any of the allegations of the Second Amended Complaint with respect to the assertions of duties, but assumes for purposes of the motion that such duties exist as alleged."). The Federation challenges the trustees' ability to adequately plead any actionable, timely breaches: the trustees have not complied with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, the applicable statute of limitations bars all purported breaches that occurred before May 19, 2014, and the Federation has not breached its fiduciary duties since 2014.

## A. Rule 9(b)

The Federation contends that the trustees have not adequately pled their breach of fiduciary duty claim. The parties dispute whether Rule 9(b)'s heightened pleading standard applies.

Under Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud." What "particularity" requires depends on the case, but usually the party must describe "the who, what, when, where, and how of the fraud." *Camasta*

*v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)).

A claim for breach of fiduciary duty is not a claim for fraud. But the parties acknowledge that Rule 9(b) kicks in "where the plaintiff alleges that a defendant's breach of fiduciary duty took the form of a fraudulent act." *Rogers v. Baxter Int'l, Inc.*, 417 F. Supp. 2d 974, 984 (N.D. Ill. 2006), *aff'd*, 521 F.3d 702 (7th Cir. 2008); *see Thornton v. Evans*, 692 F.2d 1064, 1083 n.43 (7th Cir. 1982). And "averments of fraud must be pled with particularity even if the plaintiff does not style his claim as one for fraud." *Rogers*, 417 F. Supp. 2d at 984.

The trustees allege that the Federation breached its fiduciary duties when it "misused, misappropriated, and otherwise failed in its fiduciary duty to faithfully follow the Trust's annual distribution instructions and restrictions," i.e., when it did not distribute the Trust's funds as the trustees instructed. Dkt. 68, ¶ 68. At first blush, the alleged breach does not appear to be a fraudulent act. But the trustees accuse the Federation of misrepresenting its intentions and committing fraudulent acts in the process. The trustees allege that the Federation told the trustees that it would comply and had complied with their instructions, even when it did not. The Federation lied. The trustees allege that "the Federation intentionally hid this information from the Trust and the [t]rustees." *Id.* ¶ 71. The trustees go so far as to accuse the Federation of "actionable misrepresentations." *Id.* ¶ 73. These averments are subject to Rule 9(b). Though breach of fiduciary duty is not, by definition, a fraudulent tort, "Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). The trustees' contention that the claim targets the

Federation's "objective failure" to abide by the trustees' instructions does not change the fact that the trustees have alleged fraud. Dkt. 81, at 17.

So the court must determine whether the trustees have complied with Rule 9(b). Assuming the truth of the trustees' allegations, here's what they tell us. We know that until 2015, the Federation consistently told the trustees that it would comply and had complied with the annual distribution instructions. We know that at some point between 1980 and 2015, the Federation told the trustees that it would disburse the annual distribution as instructed, but it did not. We know that on at least one occasion, the Federation sent restricted funds (money earmarked for the Israeli Emergency Fund) to organizations without restricting its use. We know that on other occasions, the Federation used Trust funds for impermissible purposes, such as satisfying its "obligations and commitments to other entities, such as the United Jewish Communities and the Jewish Federation of North America." Dkt. 68, ¶ 70. We know that the Federation intentionally hid the fact that it misused the Trust funds.

The trustees have pled their breach of fiduciary duty claim with sufficient particularity. They identify the who, the Federation, and the what, its failure to comply with distribution restrictions and related misrepresentations. They provide exemplar "hows." And they are not required to plead intent with particularity. Fed. R. Civ. P. 9(b) ("[I]ntent . . . and other conditions of a person's mind may be alleged generally."). The weak spot is the when: they do not allege *when* the purported breaches occurred within a nearly 40-year period. But at this point, with discovery ongoing and the dispositive motion deadline around the corner, the trustees have satisfied Rule 9(b)'s pleading standard. The trustees should keep in mind that summary judgment will be their "put up or shut up" moment, and they will

need to adduce evidence of particular breaches to maintain their claim. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)).

## B. Statute of limitations

The trustees' breach of fiduciary duty claim is subject to a three-year statute of limitations, pursuant to Wis. Stat. § 893.57. *Am. Tr. & Sav. Bank v. Philadelphia Indem. Ins. Co.*, 678 F. Supp. 2d 820, 825 (W.D. Wis. 2010) ("A breach of fiduciary duty claim is subject to the statute of limitations for intentional torts[.]" (citing Wis. Stat. § 893.57)); *see also Zastrow v. Journal Commc'ns, Inc.*, 2006 WI 72, ¶ 43, 291 Wis. 2d 426, 718 N.W.2d 51. So the trustees may maintain a claim for breach of fiduciary duty only if they brought it within three years of the date it accrued.

"Wisconsin applies the 'discovery rule' to tort actions, including claims subject to § 893.57." *Am. Tr. & Sav. Bank,* 678 F. Supp. 2d. at 826 (quoting *Spitler v. Dean*, 148 Wis. 2d 630, 436 N.W.2d 308, 308 (1989)). Under the discovery rule, "a cause of action will not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only the fact of injury but also that the injury was probably caused by the defendant's conduct or product." *Id.* (quoting *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 388 N.W.2d 140, 146 (1986)).

The parties agree that Wisconsin's three-year intentional torts statute of limitations and the discovery rule apply. But they debate when the trustees' claims accrued. The Federation contends that the trustees were able to discover the purported breaches as they occurred and that only those that have occurred since May 19, 2014, if any, are actionable. The trustees contend that they did not discover the alleged breach(es) until they filed suit

and conducted discovery.[2] Dkt. 81, at 13. The court will accept the trustees' representation regarding actual discovery. The real issue is whether the trustees should have been able to discover any and all purported breaches *as they occurred each year*, considering that the Federation was reporting to the trustees. The trustees have one potentially compelling reason for why they were unable to discover the breaches sooner: the Federation was lying to them about how it handled its distributions. As discussed, the trustees allege that the Federation "always . . . informed the [t]rustees that the Federation would comply with the instructions and restrictions placed upon the annual distribution" and that the Federation hid its efforts to misuse the distributions. Dkt. 68, ¶¶ 66, 71.

Fact issues prevent the court from adjudicating any statute of limitations issues at this point. The court cannot determine whether the trustees should have been able to discover the purported breaches as they occurred by exercising reasonable diligence, both because that question raises fact issues regarding the Federation's purported fraud and because the trustees have not yet nailed down *when* the purported breaches occurred. The court cannot decide the issue on this motion to dismiss. We will have to resolve this issue at a later date, either at summary judgment on a more complete, undisputed factual record or at trial. *See Am. Tr. & Sav. Bank*, 678 F. Supp. 2d at 826 ("Because facts are disputed, whether plaintiff exercised reasonable diligence is a question of fact for the factfinder."); *Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 565 N.W.2d 94, 105 (1997) ("Ordinarily, reasonable diligence is a

---

[2] To say that the trustees learned about purported breaches during discovery is a stretch. Instead, it appears that the trustees discovered certain facts that could suggest that discovery will reveal that the Federation breached certain duties it owed the trustees. *See* Dkt. 81, at 14 ("At minimum, the Trustees are entitled, to discovery into what 'community code 24550' is and how MJF's 'account' at JFNA/UJC is handled. Such discovery will establish that MJF was using the Cohen Trust's annual gift for its own benefit, and not adhering to the Trustees' restrictions.").

question of fact for the fact-finder. However, when the facts and reasonable inferences that can be drawn from them are undisputed, whether a plaintiff has exercised reasonable diligence in discovery his or her cause of action is a question of law." (citation omitted)).

## C. Breaches allegedly occurring between 2014 and 2016

Believing it had the statute of limitations issue locked up, the Federation looks to the previous three years and argues that the trustees do not have any actionable, timely breach of fiduciary duty claims: the Federation has not distributed the 2015 or 2016 funds, and it distributed the 2014 funds as directed. The court will address each in turn.

The Federation has not distributed the 2015 or 2016 funds—those funds are "being held in a restricted 'reserve' under the control of the Federation and none of those funds has been distributed to the designated donees." Dkt. 68, ¶ 35. As discussed, the trustees allege that the Federation breached its fiduciary duties when it distributed or used Trust funds against the trustees' wishes; they do not allege that the Federation's decision to hold the 2015 and 2016 funds in escrow violated any fiduciary duties. If the trustees had wanted to pursue that conduct, they could have pled as much. So that conduct is not actionable under count five. (The trustees bring a separate claim regarding the Federation's decision to hold the funds in escrow. *See id.* ¶¶ 55-58.)

The Federation's arguments regarding the 2014 funds wade into fact issues more appropriately resolved at summary judgment or trial. The Federation essentially asks the court to take it at its word that it distributed the 2014 funds as the trustees instructed, but, as discussed, the veracity of those representations is at issue. The parties and the court will need to sort through this at summary judgment.

MOTION TO COMPEL

The Federation seeks the production of all communications between the trustees and the law firm Kallina and Associates, which represented them at one point. The trustees have asserted that those communications are protected by attorney/client privilege and refused to produce them. The Federation moves to compel.

The Federation contends, essentially correctly, that the trustees owe a fiduciary duty to the Federation, because the Federation is the sole beneficiary of the Trust. But the Federation further contends that the trustees cannot assert attorney/client privilege because of the "fiduciary exception." The theory is that because the trustees must act only in the interests of the beneficiary, the beneficiary is effectively also a client of the lawyer who represents the trustees.

The Federation finds some threads of support for this notion in some older Wisconsin cases, particularly *In re Hoehl's Estate*, 181 Wis. 190, 193 N.W. 514, 515 (1923). Some states have recognized a fiduciary exception. *See, e.g.*, *United States v. Mett*, 178 F.3d 1058, 1062 (9th Cir. 1999). And it is generally recognized in the ERISA context. *Id*. But the court concludes that Wisconsin does not recognize a general fiduciary exception to attorney/client privilege. Attorney/client privilege is a statutory creation, and the fiduciary exception is not among the exceptions recognized in Wisconsin's statute. Wis. Stat. § 905.03(4). And *Hoehl's Estate* presents a much simpler situation that is not squarely analogous to this case.

The trustees have a duty to keep the Federation informed of actions that might affect the Federation's interests. But the trustees are also entitled to get their own legal advice. That legal advice is privileged, unless one of the exceptions in § 905.03(4) applies. The Federation has not persuaded the court that they do. After all, the Trust itself retained a different law

firm to represent it in preparation for this suit. Had the Federation sought communications with that law firm, the results might be quite different.

But under the circumstances of this case, it is not inconceivable that the crime/fraud exception might apply. Trustee Kallina's own law firm represented the trustees, which raises the possibility of a conflict of interest and prohibited self-dealing. And the amount of the fees seems very large in relation to the ordinary questions one would expect to come up in the administration of a charitable trust. It is not clear that the trustees met their duty to keep the Federation informed of actions that might affect its interests. Accordingly, the court will grant the motion to compel production of unredacted invoices for the services that Kallina and Associates provided to the trustees. Billing entries do not typically contain substantive legal advice; typically they include only the information that would be included on a proper privilege log, including the topic of a communication and the parties to it. But the Federation is entitled to review these invoices to ensure that the services of Kallina and Associates were not used in connection with a fraud committed against the Federation. The trustees' claw-back requests are denied. The trustees have until Monday, August 28, 2017, to produce the invoices.

The motion to compel is otherwise denied, though the Federation may renew it if the invoices suggest that the crime/fraud exception might apply. Both sides will bear their own fees and costs in connection with this motion.


ORDER

IT IS ORDERED that:

1. Defendant the Minneapolis Jewish Federation's motion to dismiss, Dkt. 72, is GRANTED in part and DENIED in part, as discussed herein.

11

2. Defendant's motion to compel, Dkt. 49, is GRANTED in part and DENIED in part. The trustees have until Monday, August 28, 2017, to produce the invoices.

Entered August 18, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge