IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARYJO COHEN, FREDERIC J. FRANSEN, and
EMANUEL J. KALLINA, II,
in their capacities as trustees of the Melvin S. Cohen
Trust for the Minneapolis Federation for Jewish Service,

                    Plaintiffs,

     v.

THE MINNEAPOLIS JEWISH FEDERATION,

                    Defendant.

OPINION & ORDER

16-cv-325-jdp

---

This case involves a dispute between the current trustees and the beneficiary of a charitable trust. The court will refer to the three named plaintiffs collectively as the Trustees. The beneficiary is the defendant, which the court will refer to as the Federation. The central dispute concerns the parties' relative authority over the trust and its operations, but there are side issues concerning whether the parties have met their obligations to each other.

The central dispute was decided at summary judgment, Dkt. 188, and the court will assume familiarity with that opinion. The court determined as a matter of law that the Trustees did not have complete freedom to designate the recipients of the trust's annual gift to the Federation. The court also determined that the Trustees had breached their fiduciary duty to the Federation in multiple ways, including by attempting to modify the trust agreement to expand the Trustees' authority while limiting the authority of the Federation, and by appointing a new trustee without considering the interests of the Federation.

But three of the side issues were left for trial:

1. whether the Federation breached its fiduciary duty to the Trustees in 2005, 2006, and 2007 by failing to distribute funds to the United Jewish Communities as directed by, and as represented to, the Trustees;

2. whether trustee Maryjo Cohen breached her fiduciary duty to the Federation by charging the trust for an employee's personal work that was unrelated to the trust; and

3. whether trustee Kallina breached his fiduciary duty to the Federation by improperly billing the trust for legal services.

The court also reserved for resolution after trial all issues related to remedies, including whether the Trustees should be replaced. After the court issued the summary judgment opinion, the parties stipulated to a court trial, Dkt. 189, which was held on January 29 and January 30, 2018. The parties have submitted post-trial briefs and the case is ready for decision.

The court concludes that the Federation is entitled to judgment on most of the remaining issues in dispute. A common theme running through this case is that the Trustees viewed the trust merely as a vehicle for the Cohen family's own charitable interests, and they viewed the Federation as simply the conduit that allowed the Cohen family to make charitable contributions as they chose, while receiving the benefits as a "supporting organization" under federal tax regulations. 26 C.F.R. § 1.509. This view manifested itself repeatedly at trial, during which it was clear that neither Cohen nor Kallina appreciated that they owed any duty to the Federation or recognized the conflicts of interests inherent in the way they ran the trust. The Trustees' repeated breaches of their fiduciary duty convince the court that the Trustees cannot effectively run the trust in the best interests of the Federation, as required, and they must be replaced.

## BACKGROUND

The background was set out in the court's summary judgment decision, Dkt. 188, at 6–18, so the court will provide only a succinct summary here. Additional facts material to the issues resolved at trial will be set out in the analysis section of this opinion.

The trust at issue is the Melvin S. Cohen Trust for the Minneapolis Federation for Jewish Service, which the court will refer to as "the Cohen Trust" or simply "the trust." (The Minneapolis Federation for Jewish Service later changed its name to Minneapolis Jewish Federation, but it is the same entity.) The Cohen Trust was created in 1980 through the execution of a trust agreement between Cohen Foundation (a private foundation that had been established by Melvin Cohen) and the trusts' three initial trustees: Melvin Cohen, Gerald Schwartz, and Stephen Lieberman. After Melvin Cohen died, his daughter Maryjo Cohen took his place as a trustee. The court will refer to Melvin Cohen by his full name and to Maryjo Cohen as simply "Cohen." Emanuel Kallina and Frederic Fransen became trustees in August 2015 and November 2015, respectively. The Cohen Trust currently has approximately $70 million in assets.

The basic purpose of the trust is to "benefit or carry out the charitable, education[al,] and religious purposes" of the Federation. Dkt. 132–1, at 2. The trust agreement allows the Trustees to designate "a particular function, activity, or grant program of the Federation, for the benefit of which the trust's annual distribution, or any designated portion of it, shall be applied" *id.* at 4, but, as the court concluded at summary judgment, it does not allow the Trustees to direct the Federation to distribute the gift to particular charities.

Beginning in 1981, the Cohen Trust made an annual gift to the Federation. Each year, the trust would send the Federation a letter accompanied by a check. The Federation would

then write checks to different recipients. The gifts were distributed as directed by the Cohen Trust without any serious disputes until 2015, when the Trustees attempted to designate most of the annual gift to the Jewish Education and Support Fund, a donor-advised fund held at the Donors Trust, Inc. Donors Trust has as its mission "to promote liberty through limited government, personal responsibility, and free enterprise." Dkt. 161, ¶ 9. Cohen is the account holder of the Jewish Education and Support Fund. The Trustees also attempted to designate the remainder of the 2015 Federation gift to other specific charities.

The Federation objected to the designations on the ground that some of them were not functions, activities, or grants of the Federation. After multiple rounds of letters and meetings, the parties could not resolve their differences. The Federation decided to hold the 2015 distribution in reserve pending a resolution.

In the meantime, the Trustees met secretly to amend the trust agreement in several ways. The proposed changes included granting the Trustees the right to choose particular charities over the Federation's objection and removing the Federation's right to appoint a successor for that trusteeship when the outgoing trustee failed to choose one. The Trustees did not inform the Federation about the amendments until after the Trustees had purported to enact them.

In 2016 and 2017, the Trustees again attempted to designate that the Federation distribute particular dollar amounts to particular charities. And again the Federation chose to hold the funds in reserve until after the dispute was resolved.

On April 19, 2016, the Trustees filed this suit in state court; the Federation timely removed it to this court. The court has jurisdiction on the basis of diversity pursuant to 28 U.S.C. § 1332.

ANALYSIS

## A. Trustees' breach of fiduciary duty claim

The trial addressed one claim asserted by the Trustees: that the Federation breached its duty to the trust by failing to distribute the trust's gifts as directed to United Jewish Communities (UJC) in 2005, 2006, and 2007. The Trustees characterize the Federation's obligation as a fiduciary duty, although the precise nature of the duty is not clear. In any case, the Federation does not dispute that it owed a duty to the trust to distribute the gifts as directed by the trust in those years, and it certainly had an obligation to distribute the funds as the Federation promised and later reported.

The Federation seeks dismissal of this claim on the grounds that it is untimely, and on the merits, contending that the evidence shows that the Federation properly distributed each annual gift to the UJC. The court concludes that the Federation is correct on both grounds.

### 1. Statute of limitations

The parties have identified two statutes that may govern the limitations period for the Trustees' claim: (1) Wis. Stat. § 893.57, which applies to intentional torts generally and has a three-year limitations period; and (2) Wis. Stat. § 701.1005(1), which applies to claims against trustees in particular and has a one-year limitations period. The court concludes that the Trustees' breach of duty claim is untimely regardless whether the limitations period is one or three years.

Because the alleged breaches occurred approximately ten years before the Trustees filed this lawsuit, the Trustees rely on the "discovery rule," under which a tort claim does not accrue until "the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first." *Gumz v. N. States Power Co.*, 2007 WI 135, ¶ 25, 305 Wis. 2d 263,

5

275, 742 N.W.2d 271, 276 (internal quotations omitted). But this rule doesn't help the Trustees. To support this claim at trial, the Trustees' relied primarily on the testimony of their accounting expert, Marc Gelbtuch, who in turn relied on the Federation's annual reports and financial statements from 2005, 2006, and 2007. The Trustees had all of those documents well before the limitations period, so the Trustees don't have a legitimate excuse for failing to raise the claim earlier.

The Trustees resist this conclusion on two grounds. First, they say that they were not aware of this claim until after they conducted discovery in this case. But, as noted above, Gelbtuch relied on documents that the Trustees received many years ago. The only newly produced document they cite is a 2006 letter from the Federation to the UJC in which the Federation asked that money being donated "be applied to our account." Trial Ex. 132. But the Trustees cite no testimony in which Gelbtuch relied on that document, so it is difficult to see how the absence of that document could have delayed accrual of the claim. In any event, the document was ultimately of no value to the Trustees' claim. Tom Sanders, who was the president of the Federation at the relevant time, testified that the "account" was simply a record of how much the Federation had committed to the UJC. Dkt. 254, at 140. The Trustees cited no evidence to the contrary, so the letter provides no support for the Trustees' claim that the Federation did not honor its commitment to the Cohen Trust and its disclosure does not support the application of the discovery rule.

Second, the Trustees contend (for the first time in their post-trial response brief) that it is not reasonable to expect them to have reviewed the annual financial disclosures at the level of detail that would have allowed them to discover a potential claim. Not surprisingly, the Trustees cite no authority in support of this view of the discovery rule. A party—the Cohen

Trust here—cannot sit on its rights for years until something prompts it to take a deeper look at the information it has. Such a permissive standard would defeat the purpose of statutes of limitations. The court concludes that the Trustees had adequate notice of their potential claims in 2005, 2006, and 2007, so the claims are untimely.

## 2. Merits

Even if this claim were not barred by the statute of limitations, it would fail on the merits. The evidence at trial showed that for the years at issue—2005, 2006, and 2007—the trust designated a substantial part of its annual to the Federation for "apparent needs in Israel," that the Federation conveyed that amount to UJC for the Israel Emergency Fund, and that the UJC acknowledged receipt of that amount to the trust. Trial Ex. 111, at 207–11, 215–19, and 222–25. The Trustees elicited testimony from its forensic accounting expert, Marc Gelbtuch, that he did not see any "direct evidence" of the transmission of the funds to UJC, such as a cancelled check or a wire transfer receipt. But Gelbtuch acknowledged that he had no basis to conclude that the Federation did not actually pay the funds to the UJC. The court now finds on the basis of the trial evidence that the Federation made each of the payments to the UJC as reported.

The Trustees contended at trial that the Federation had not paid the funds "as directed" by the Cohen Trust. Their theory was that the Federation had surreptitiously used the trust gift to satisfy the Federation's pre-existing commitments to the UJC, thus breaching the Federation's obligation to treat the trust gift as "accretive." In the Trustee's view, the accretive requirement meant that the Federation was not only required to transfer the funds to the UJC, it had to apply the gift to purposes over and above any other commitment that the Federation had. The Trustee's theory has two fatal flaws.

The first flaw is that nothing requires that the Federation treat the trust's annual gift as "accretive." The Trustees concede that the trust agreement itself does not contain any accretive requirement. Rather, their position is that the Federation later agreed to accept an accretive requirement on gifts from the Cohen Trust and the Federation's duty arose from that agreement. But the Trustees presented no evidence that the Federation ever agreed to such a requirement. Former Federation president Sanders testified that no one ever communicated an accretive requirement to him and that was not his understanding of the trust gifts. The 2005, 2006, and 2007 letters that accompany the Cohen Trust's annual gift say nothing about an accretive requirement. In fact, the Trustees do not cite any correspondence in which the Trustees communicated this restriction to the Federation, let alone that the Federation accepted such a restriction.

The sole documentary evidence that the Trustees cite are two letters from the UJC (actually its predecessor) to the Federation. But neither letter supports the theory that the trust gift was required to be accretive. The 1998 letter states the UJC's understanding that the Federation "has always honored the donor's intentions and transmitted the [trust's annual gift] separately to [the UJC] over and above other campaign allocation payments" from the Federation. Trial Ex. 103. If the Trustees mean to offer the letter to show the settlor's intent—which is to say the intent of the Melvin Cohen Foundation—the letter from the UJC is obviously inadmissible hearsay. If the Trustees mean to offer the letter to show that the Federation knew about the settlor's intent, it is irrelevant. Even if the Federation was aware that the settlor and the Trustees wanted the annual gifts to be treated as accretive, that knowledge does not show that the Federation ever agreed to be bound by that requirement, even if the Federation's practice was sometimes consistent with that intent.

The 1999 letter, Trial Ex. 140, is not helpful either for the same reasons. To be clear, the 1999 letter suggests that the UJC wanted the Cohen Trust gift to be treated as accretive, because that approach had the effect of increasing the Federation's commitment to the UJC. But the expectations of the UJC are simply irrelevant to the terms of the trust.

The purported accretive requirement is also inconsistent with the Cohen Trust's obligations as a supporting organization under section 509(a)(3) of the Internal Revenue Code. As explained in the court's summary judgment opinion, the trust, as a supporting organization, was required to operate for the benefit of the supported organization, in this case the Federation. Dkt. 188, at 19-22. The trust could not, consistent with federal tax law, subordinate the interests and needs of the Federation to the trustee's own charitable objectives. Ultimately, the purported "accretive" requirement is simply another manifestation of the Trustees' erroneous view that the Federation was merely a conduit for the Cohen family's charitable choices.

The second fatal flaw in the Trustee's theory is factual: the evidence shows that in 2005, 2006, and 2007, the Federation handled the trust's annual gift exactly as directed and promised. The gist of Gelbtuch's trial testimony was that the trust made a restricted gift to the Federation to be separately conveyed to the UJC. But, according to Gelbtuch, the Federation's annual financial statements show that payments to the UJC were made from the Federation's unrestricted funds. The conclusion that Gelbtuch drew was that the Federation folded the trust's gift into its unrestricted funds, which it then used to satisfy its obligation to the UJC, with the end result that the trust gift freed up funds that the Federation could use for other things that the trust did not intend to support.

But Gelbtuch's testimony was effectively rebutted by testimony that, as explained in the notes to the Federation financial statements, restricted gifts were included among unrestricted funds if the restriction was satisfied within the same year the gift was received. *See, e.g.*, Trial Ex. 226, at 6 (note 2(b)). The trust gift was transmitted to the UJC within two weeks of the Federation receiving it. Because the restriction on the trust's annual gift was satisfied within the same year it was received, the trust gift was included among the funds listed in the financial statements as "unrestricted." So, contrary to Gelbuch's testimony, there was no inaccuracy or impropriety in the Federation's financial statements. And correspondence from the Federation to the UJC, and the UJC acknowledgement letter to the trust confirm that the trust gifts in 2005, 2006, and 2007 were handled as directed and reported.

The Trustees also contend, based on Gelbtuch's testimony, that the 2006 trust gift was applied to a special Israel Emergency Campaign, despite the fact that Melvyn Cohen specifically declined to contribute to it. Dkt. 258, at 10. The Federation's Israel Emergency Campaign raised $3,957,459 over the course of about a month in the summer of 2006. Trial Ex. 235, at 13 (2006 Annual Report). For 2006, the trust designated $1,718,000 for distribution to the to the UJC Israel Emergency Fund. But the Federation's IRS Form 990 for 2006 shows total disbursement to the UJC of only $3,298,947. Trial Ex. 162, at 53. Gelbtuch concludes from this that the Federation must have used the trust gift to cover part of the special Israel Emergency Campaign. Dkt. 254, at 1-A-96. Gelbtuch's testimony is not persuasive.

The special Israel Emergency Campaign raised $3,957,459 over and above the Federation's 2006 annual campaign, which raised about $14.9 million. Of that annual campaign fundraising, the Federation allocated $3,156,000 to the UJC. Trial Ex. 235, at 14. Gelbtuch assumes that the proceeds of the special Israel Emergency Campaign went to the

UJC, and must have been part of the disbursement to the UJC disclosed on the 2006 Form 990. But there is no evidence to support that assumption. The proceeds of the special Israel Emergency Campaign could have been paid to another Israel-supporting entity. According to the more credible testimony from the Federation witnesses, the special Israel Emergency Campaign was entirely separate from the Federation's 2006 annual campaign fundraising and allocation. The donors to the special Israel Emergency Campaign were listed in the Federation's 2007 annual report. Trial Ex. 21, at 28. The Cohen Trust is not listed as a donor to the special Israel Emergency Campaign, although it is listed as donor to the 2006 and 2007 annual campaigns. *Id.*, at 34; Trial Ex. 235, at 26. The court finds as a fact that the Federation did not apply any of the Cohen Trust's funds to the special Israel Emergency Campaign.

The Trustees also contend in their post-trial brief that the evidence is insufficient to show that UJC actually sent the money to Israel, and that the Federation did nothing to ensure that it did. Dkt. 258, at 11. The Trustees are correct that there was no evidence at trial that confirmed that the trust gift actually got to Israel; the evidence established only that it got to the Israel Emergency Fund at the UJC. The Trustees have the burden of proof on its claim against the Federation, and it cannot satisfy this burden merely by positing that the UJC might not have done what it was supposed to do with the trust gift. There was no evidence that the Federation had any duty to audit the UJC, or that the trustees asked that it do so. The evidence shows instead that for years the trustees were satisfied so long as the funds were transmitted to, and acknowledged by, the UJC.

In sum, the court finds that the Trustee's have failed to prove their claim that the Federation breached its duty to the Trust in 2005, 2006, and 2007.

**B. Federation's breach of fiduciary duty claims**

The trial addressed two of the Federation's claims for breach of fiduciary duty: (1) defendant Cohen breached her fiduciary duty to the Federation by overcharging the trust for accounting services performed by Patricia Ellenson; and (2) Kallina breached his fiduciary duty to the Federation by improperly billing the trust for legal services. The court will consider each claim in turn.

### 1. Patricia Ellenson's salary

Ellenson runs the Cohen family office.[1] In this capacity she performs accounting work and tax preparation for several charitable organizations that the Cohen family has established, including the Cohen Trust, as well as about 19 other family trusts that hold the assets of the Cohen family members. She began in 1977 as a payroll clerk for National Presto (one of the Cohen family's companies) and then was hired into the family office in 1993. Ellenson reports directly to Cohen.

The issue is whether Cohen breached her fiduciary duty to the Federation by allocating a disproportionate share of Ellenson's salary to the Cohen Trust to the unfair benefit of the Cohen family's other trusts. This issue has two parts: (1) whether Cohen's method of allocating Ellenson's salary is unreasonable and creates a conflict of interest with her duties to the Federation; and (2) whether the allocation led to the Cohen Trust actually being overcharged.

A threshold question concerns the time frame at issue. The Trustees raised a statute of limitations defense in their opening brief, but the Federation has limited its claim to expenses

---

[1] As explained by the Trustees' expert, David Newman, a family office "is a practice where a family will centralize management of investment and other required administration for the family and entities, both charitable and noncharitable, that are somehow affiliated with the family." Dkt. 244, at 44:3–6.

incurred in 2015. Dkt. 259, at 30. The Trustees do not challenge the timeliness of that aspect of the Federation's claim, Dkt. 266, at 12 n.4, so the court will limit the claim to 2015 and proceed to the merits.

We start with the method of allocation, which the court finds to be unreasonable. Neither Ellenson nor Cohen could provide a sound explanation as to: (1) why 90 percent of Ellenson's salary came from the Cohen family charitable entities (including the Cohen Trust) and only ten percent from the family trusts; or (2) why 50 percent of Ellenson's salary comes from the Cohen Trust in particular. When asked whether the 90/10 split reflects an accurate assessment of the time she spent on the various trusts, Ellenson candidly replied that she didn't know.

Cohen testified that the 10 percent allocation to the family trusts was established by her father and she simply adopted it when she became a trustee in 2008.[2] But that just shows that Cohen has never determined whether the allocation is accurate.

The evidence at trial shows that the 90/10 split is not a proper allocation. For example, Cohen testified on cross examination that the L.E. Phillips Family Foundation made about 120 individual gifts in the course of a year whereas the Cohen Trust had a single beneficiary and made essentially one gift. Ellenson testified that the charitable trusts generally and the Cohen Trust in particular required more work because of the conservative investments (all in CDs that had to be redeemed and repurchased at intervals). But that explanation is dubious because the L.E. Phillips Family Foundation has *more* assets than the Cohen Trust.

---

[2] The Federation objects to this testimony on hearsay grounds, but that objection is overruled because Cohen was not offering the testimony for the truth, but simply to explain why she used the allocation she did.

Determining an accurate allocation is made more difficult by the lack of any time records for Ellenson. Experts for both sides testified that time keeping is not the only reasonable method of allocating Ellenson's salary, even if it might be the most accurate. But the Trustees must employ *some* reasonably reliable method for determining a proper allocation and at trial they failed to show that they had one.

The next question is whether the allocation presents a conflict between Cohen's personal interest and that of the trust, which she would have had an obligation to disclose to the Federation. The Trustees say that there is no conflict of interest because any changes in allocation between the various charitable trusts would produce no possible benefit to her. But that view overlooks the effect of allocating expenses between the family trusts and the charitable trusts. Shifting expenses from the family trusts to the charitable trusts would mean that the expenses of managing the wealth of the Cohen family would be borne, ultimately, by the Federation and the other charities.

Cohen tried to downplay her role in approving the allocation each year, testifying that she always accepted Ellenson's recommendation. But Ellenson said she simply followed the 90/10 division. Regardless which of these two made the allocation, it doesn't change the fact there *was* a conflict. It is undisputed that Cohen had the final say over the allocation and that the other two trustees for the Cohen Trust had no say in the matter. The Trustees do not even attempt to explain why the other trustees were excluded from that decision. This is yet another example of Cohen demonstrating her view that the Cohen Trust was simply another family charity.

The bottom line is that Cohen has a conflict of interest. She and the other trustees either should have used a different method to determine Ellenson's salary or disclosed the

conflict to the Federation and sought its consent. Wis. Stat. § 701.0802(2) (prohibiting a trustee's financial conflict of interest unless certain exceptions apply, including consent by the beneficiary).

The remaining question is whether the Federation proved any damages caused by this breach. The Federation relies solely on the conclusion of its accounting expert, James Ritts, that the Cohen Trust was overcharged approximately $60,000 for Ellenson's services. Dkt. 259, at 30. But the problem with Ritts's testimony is that he did not consider two factors that should have been accounted for in his evaluation. First, he did not take into account the fact that the "family office" approach adopted by Cohen requires an employee who can perform the highest level of accounting work required, whereas the Ritts firm could use lower-priced time-keepers for the more routine tasks. Second, Ritts's testimony did not show that he fully appreciated the amount of work required by rolling over certificates of deposit, which, according to Ellenson, represented a significant portion of her time related to the Cohen Trust.

The Federation did not elicit any testimony from Ritts in which he discounted his estimates to take those factors into account. And the Federation does not otherwise provide the court any basis for reaching a more accurate figure. Because Ritts's testimony is not sufficient to measure damages and the court may not rely on speculation, the court will not award any damages on this claim. *Plywood Oshkosh, Inc. v. Van's Realty & Constr. of Appleton, Inc.*, 80 Wis.2d 26, 31, 257 N.W.2d 847 (1977) ("[T]he evidence must demonstrate that the injured party has sustained some injury and must establish sufficient data from which the trial court or jury could properly estimate the amount.").[3]

---

[3] The Federation does not contend that Cohen's conflict of interest renders all of Ellenson's salary suspect and it is not seeking injunctive relief on this claim, except as part of its showing that the Trustees should be removed from office, which is discussed below. As a result, the

## 2. Kallina legal fees

Kallina began providing legal services to the Cohen Trust in September 2014, taking his directions from Cohen. In August 2015 he became a trustee himself and continued providing legal services to the Cohen Trust. Kallina confirmed during trial that his client was the Cohen Trust, not the Trustees.

The question for trial was whether Kallina breached his fiduciary duty to the Federation by billing the trust for certain legal services. The Federation challenges certain individual charges as unrelated to the needs of the Cohen Trust, and it more generally challenges the validity of *all* Kalina's legal work because it was not properly disclosed or approved. Because the court concludes that the engagement of Kallina's law firm was itself a breach of fiduciary duty, it is not necessary to consider whether individual charges were appropriate. The Cohen Trust is entitled to be reimbursed for all of Kallina's legal work.

Kallina's legal work cannot be charged to the Federation for three reasons: (1) he wasn't licensed to practice law in Wisconsin; (2) once he became a trustee, he had a conflict of interest; and, most important, (3) from nearly the inception of the representation, one of Kallina's primary tasks was to try to find ways of using the Federation merely as a conduit for the charitable giving of the Cohen family.

### a. Law license

Kallina is not licensed to practice law in Wisconsin, yet he was representing a Wisconsin-based trust that was governed by Wisconsin law. For this reason alone, he should not have been performing any work on behalf of the Cohen Trust.

---

court will not consider either whether Ellenson's entire salary is an appropriate measure of damages or what actions are required to make the allocation more equitable.

### b. Conflict of interest

The trust agreement prohibits self-dealing in Article VI. And once Kallina became a trustee, there was an inherent conflict of interest between his duties as a trustee and his firm receiving payment for providing legal services to the Cohen Trust. Wis. Stat. § 701.0802(2). The Trustees do not argue otherwise. Thus, Kallina should have stopped doing legal work for the trust when he was appointed a trustee, or the Trustees should have disclosed the conflict to the Federation.

And even before Kallina became a trustee, his client was *the Cohen Trust*, not the Trustees themselves. But Kallina did not appear to appreciate that distinction at trial. And as the lawyer for the trust, Kallina owed a duty of disclosure to the Federation. He could have represented the Trustees and had an attorney-client relationship with them, but instead he represented the trust, which meant that he could not keep his work confidential from the Federation. Kallina's failure to keep the Federation informed so that it could protect its own interests was an independent breach of fiduciary duty. *Zastrow v. Journal Commc'ns, Inc.*, 2006 WI 72, ¶ 35, 291 Wis. 2d 426, 448, 718 N.W.2d 51, 61 ("[I]f a trustee does not make a full disclosure of material facts to a beneficiary, that conduct is a breach of the trustee's duty of loyalty.").

### c. Working against the interests of the Federation

As the lawyer for the Cohen Trust and as a trustee, Kallina had a fiduciary duty to the Federation. But much of his work involved actively working against the interests of the Federation. For example, in December 2014, Kallina attempted to persuade the Federation to set up a donor-advised fund for the L.E. Phillips Family Foundation. The foundation would then make a donation to that fund, and direct the Federation to make a donation from that fund to the Donor's Trust. Kallina did not disclose the reason behind the request, which was

an attempt to establish a precedent that the Federation was willing to use a donor-advised fund as a conduit to the Donors Trust.

There is simply no conceivable way that the work related to the donor-advised fund was for the benefit of the Federation. And in fact, as it emerged from the testimony at trial from both Cohen and Kallina, neither of them recognized that they owed any duty or obligation to the Federation. Both of them conceived of the Cohen Trust as a vehicle for the Cohen family's charitable giving and the Federation as merely the conduit for that giving. Establishing the Federation as such a conduit appears to have been the very point of hiring Kallina in the first place. It is simply not consistent with the Trustees' duty of loyalty to charge the trust for legal work undertaken for the purpose of undermining the interests of the Federation.

The same is true for all the work Kallina performed to determine whether and how the Federation could be replaced as the trust beneficiary, and all work in connection with the Trustee's attempt to modify the trust. The Trustees attempt to justify this work as a legitimate way of advancing the "settlor's intent," but the court has already rejected that notion. Kallina is not entitled to payment for any work whose purpose was to diminish the Federation's rights as a beneficiary of the trust.

### d. Disgorgement as a remedy

The Trustees raise three objections to an order requiring them to reimburse the Federation for all of Kallina's legal expenses: (1) the Federation failed to cite authority showing that disgorgement is an appropriate remedy under the facts of this case; (2) some of the legal work Kallina prepared was appropriate, such as tax advice and work related to compliance with tax law; and (3) complete disgorgement is not tied to the scope of any breached of fiduciary duty.

These objections are not persuasive. First, Wisconsin courts have held that disgorgement of fees is an appropriate remedy for a breach of fiduciary duty. *Cmty. Nat. Bank v. Med. Ben. Adm'rs, LLC*, 2001 WI App 98, ¶ 8, 242 Wis. 2d 626, 634, 626 N.W.2d 340, 344. *See also Crites, Inc. v. Prudential Ins. Co. of Am.*, 322 U.S. 408, 414 (1944) (any profits resulting from breach of fiduciary duties must be disgorged). And Wisconsin's trust code gives courts broad discretion to order remedies for a breach of trust. Wis. Stat. § 701.1001. Approved remedies include compelling a trustee to redress a breach of trust by repaying money, § 701.1001(2)(c), and recovering trust property, § 701.1001(2)(i).

The court will address the second and third objections together. The court agrees that some of Kallina's fees were for work that might have been appropriately charged to the trust, such as advice on the trust's compliance with federal tax law. In particular, Kallina did extensive work in connection with the excess business holdings issue, a tax issue that affected several of the Cohen charitable entities, including the Cohen Trust. But the court concludes that the Trustee's engagement of Kallina's firm was a breach of their duty to the Federation at the outset, and it presented a substantial conflict of interest once Kallina became one of the trustees. The court will order the Trustees to reimburse the Cohen Trust for all of Kallina's legal work. Neither side provides the total amount, so the parties will have to address that question in the supplemental filings that the court will order.

## C. Other requested remedies

In addition to damages, the Federation seeks the following forms of relief: (1) removal and replacement of each of the Trustees; (2) attorney fees and costs; (3) an order prohibiting the Trustees from using trust funds to pay their own litigation expenses; (4) a declaration that that the Federation may treat the Cohen Trust gifts from 2015, 2016, and 2017 as unrestricted;

and (5) a declaration that the amended trust agreement is invalid. The court concludes that the Federation is entitled to each of these requests for relief.

### 1. Removal and replacement of the Trustees

The Wisconsin trust code lists four situations in which a court may remove a trustee and at least two of those situations are present here: (1) the trustee has committed a material breach of trust; and (2) the court determines that removal of the trustee best serves the interests of the beneficiaries because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively. Wis. Stat. § 701.0706(2). The court has already determined in the summary judgment opinion that Fransen's appointment was a breach of fiduciary duty and that he should not have been appointed, so the court need not consider again whether Fransen should be removed.

As for Cohen and Kallina, both of them breached their fiduciary duty to the Federation in various ways, as discussed above and in the summary judgment opinion. And the nature of those breaches, as well as the testimony of both Cohen and Kallina at trial, make it clear that they are unwilling to act in the best interest of the Federation. In the last few years, both trustees consistently acted to undermine the Federation and limit its control over the Cohen Trust, going as far as amending the trust agreement and even attempting to remove the Federation as the beneficiary. These are not the actions of effective trustees. Even at trial, both Cohen and Kallina dug in their heels, refusing to acknowledge their duties to the Federation. The court simply sees no way that the trust can continue to function as intended with Cohen and Kallina remaining as trustees.

The next question is what process should be used to replace the Trustees. The Federation proposes the following: (1) allow the Federation to choose Fransen's successor;

(2) order the parties to meet and confer on an institutional trustee to fulfill the role of the "Independent Trustee," and, if that isn't successful, choose a successor from candidates nominated by the parties; and (3) allow the Melvin S. Cohen Foundation to choose Cohen's successor. As authority for its proposal, the Federation relies on Wis. Stat. §§ 701.0706(3) and 701.1001(2)(j), which state that a court may "[a]ppoint an additional trustee" and "[o]rder any other appropriate relief" to remedy a breach of trust.

The court will accept the Federation's proposal for successor trustees. Allowing the Federation to replace Fransen, who is in the position of Federation trustee is consistent with the terms of the trust agreement. Allowing the Melvin S. Cohen Foundation the right to the vacant "Cohen Family Trusteeship" is also consistent with the terms of the trust.

The Trustees resist the appointment of an institutional trustee for the "Independent Trusteeship" position. The Trustees submit a declaration from Cohen and a 1980 letter written by Melvin Cohen. Dkt. 267. In her declaration, Cohen says that both she and her father opposed the idea of an "institutional trustee." The court has considered this extrinsic evidence, despite its late submission, so the Federation's motion to strike this submission, Dkt. 269, is denied.

The trust agreement provides that the Temple Shalom in Eau Claire would appoint a successor to the Independent Trustee. But this entire dispute shows that competent professional oversight from an entity with experience in advising charitable trusts is not only appropriate, but sorely needed. Accordingly, the court will rely on the broad authority conferred on it by Wis. Stat. § 701.1001(2)(j) and order the parties to this case to confer to select an institutional trustee to fill the Independent Trusteeship.

## 2. Fees and costs

The parties raise three issues in their briefs regarding fees and costs: (1) whether the Federation is entitled to fees and costs; (2) if so, whether the Federation's fees and costs should be paid by the Cohen Trust or the Trustees; and (3) whether the Trustees may use money from the trust to pay their own legal fees. The Federation also discussed the reasonableness of their own fees, but that was premature in light of the court's order instructing the parties that it would assess a reasonable fee after deciding whether fee shifting is appropriate. Dkt. 263.

There does not appear to be a serious dispute about the first issue. Under Wis. Stat. § 701.1004(1), a court may award costs and fees to any party "as justice and equity may require" in the context of a case for a breach of trust. And Rule 54(d)(1) authorizes an award of costs to the prevailing party. The Trustees do not object to the Federation's request for fees under § 701.1004(1) and the court agrees that a fee award is equitable under the circumstances of this case. The Trustees say that a ruling under Rule 54 is premature because the court hadn't resolved all the claims yet at the time the parties filed their briefs. But the court has resolved nearly all of the claims of both sides in the Federation's favor. Although the Federation did not prevail on *every* claim, that is not required to qualify as a prevailing party. *Sottoriva v. Claps*, 617 F.3d 971, 976 (7th Cir. 2010).

The bigger dispute is over the source of the funds for paying the fees. The Trustees say that fees should come from the Cohen Trust; the Federation says that the Trustees should be personally responsible for playing the Federation's fees. The Trustees start off on the wrong foot by contending that an award of fees is appropriate only if the court finds bad faith. But that is the standard under *common law*, *Estate of Derzon*, 2018 WI App 10, ¶ 24, 380 Wis. 2d 108, 122, 908 N.W.2d 471, 478, not § 701.1004, which took effect in 2014. Under

§ 701.1004(1), the court may order fees "to be paid by another party or from the trust that is the subject of the controversy" under the same "justice and equity" standard cited above.

The court concludes that justice and equity require the fees to be paid by the Trustees themselves. Because the Federation is the beneficiary of the trust, using trust funds to pay the Federation's fees is akin to requiring the Federation to pay its own fees and denying it the benefit of § 701.1004(1). In light of the numerous breaches of fiduciary duty that the Trustees committed, it would not be equitable to leave the Federation with the bill.

It follows that the Trustees should not be permitted to use trust funds to pay their own litigation expenses either, a conclusion that is supported by statute. Under Wis. Stat. § 701.1004(3)(c)1, "a party may move the court for an order to prohibit the trustee from paying costs or attorney fees from trust property" in the context of claims for breach of trust. In accordance with § 701.1004(3)(c)2, the court already concluded in a previous order that the Federation had a "reasonable basis" for its breach of trust claims against the Trustees, so the court prohibited the Trustees from using funds from the trust to pay its expenses during the litigation. Dkt. 44. Although § 701.1004(3)(c)4 allows the court to revisit that determination after the litigation is completed, the court sees no reason to reach a different conclusion now. The Federation has prevailed and the Trustees lost on nearly all of the claims raised by both sides. Even as to dismissed claims, the Trustees prevailed primarily on procedural grounds. For example, the court dismissed the Federation's claim under the Prudent Investor Act, not because the Trustees complied with the Act's requirements (it is likely they did not), but only because the claim was untimely.

The Trustees all but ignore § 701.1004(3)(c)1 and this court's previous order and instead rely on a different statutory provision, as well as the trust agreement. First, they cite

§ 701.1004(2), which allows a trustee to use trust funds to pay for litigation expenses, even if the trustee loses, so long as the trustee acted in good faith. But the Trustees' reliance on § 701.1004(2) is misplaced because, under Wisconsin law, a breach of fiduciary duty is inconsistent with a finding of good faith. *Zastrow*, 2006 WI 72, at ¶¶ 30, 35–37. In other words, by finding that the Trustees breached their fiduciary duties, the court necessarily found that they were not acting in good faith. This reading of the law is supported by § 701.1004(3)(c)1, which rests on the assumption that a breach of trust cannot be an act of good faith, which is why a court may prohibit a trustee from using trust funds to pay for claims related to a breach of trust.

Alternatively, the Trustees contend (for the first time in their response brief) that the trust agreement itself authorizes using trust funds to pay for litigation expenses in this case. The Trustees forfeited this argument by failing to raise it in their opening brief. Regardless, the court already determined in a previous order that "there is no language in the Trust Agreement that conflicts with § 701.1004, so that statutory section controls." Dkt. 44, at 6. The Trustees do not acknowledge the court's previous conclusion, let alone offer any grounds for reconsidering it, so the court declines to revisit the issue.

Accordingly, the court concludes that: (1) the Federation is entitled to both costs and fees and; (2) the money to pay for those costs and fees, as well as the litigation expenses incurred by the Trustees, must come from the Trustees themselves and not from the Cohen Trust.

### 3. Distributions from escrow

As discussed in the summary judgment opinion, the Federation has been placing distributions from the Cohen Trust in escrow since 2015, when the parties first disagreed about

how the annual distribution should be spent. Now that the court has sided with the Federation and concluded that the Trustees did not have authority under the trust to designate particular charities that would receive the distribution, Dkt. 188, at 24–29, the Federation asks the court to declare that the Federation may treat the gifts as unrestricted. The Federation relies on a provision in the trust agreement that allows the Federation to treat a gift as unrestricted when "the Trustees do not designate any particular use for a distribution." Dkt. 259, at 29.

The court concludes that it is appropriate to treat the gifts as unrestricted. Although the Trustees did designate particular charities to receive the distributions, they did not designate any *uses* as allowed by the trust agreement. By failing to follow the limitations set forth in the agreement, the Trustees forfeited their right to place restriction on those gifts, at least under the circumstances of this case.

The alternative the Trustees suggest is to allow *them* to designate uses for the gift. But that suggestion makes little sense in light of the court's conclusion that the Trustees must be removed. The only other alternative would be to require the Federation to keep the funds in escrow until new trustees can be appointed. But the Federation has already waited nearly three years and it would not be equitable to delay any longer.

### 4.  Amended trust agreement

The Federation asks the court to issue a declaration that the Trustees' attempt to amend the trust agreement was invalid. The Trustees do not object to this request and the court will grant it. Because the court concluded in the summary judgment opinion that the amended agreement *is* invalid, Dkt. 188, at 32–34, it follows that the Federation is entitled to a declaration to that effect.

### 5. Punitive damages

In its opening brief, the Trustees anticipated a request for punitive damages and provided reasons why they believed an award of such damages was not appropriate. Because the Federation did not include a request for punitive damages in their post-trial briefs, the court will treat that issue as abandoned, so it is not necessary to consider it.

## ORDER

IT IS ORDERED that:

1. The Federation's motion to strike, Dkt. 269, is DENIED.

2. The Trustees' claim that the Federation breached its fiduciary duty is DISMISSED with prejudice.

3. It is DECLARED that:

   (1) Maryjo Cohen breached her fiduciary duty to the Federation by improperly allocating the salary of her employee Patricia Ellenson to the Cohen Trust;

   (2) Emmanuel Kallina breached his fiduciary duty to the Federation by improperly charging the Cohen Trust for legal services;

   (3) the Trustees may not use money from the Cohen Trust to pay their litigation expenses;

   (4) the Federation may treat the 2015, 2016, and 2017 annual distributions from the Cohen Trust as unrestricted; and

   (5) the First Amended Trust Agreement is invalid.

4. The Federation is entitled to its reasonable attorney fees and costs. The Federation has until October 18, 2018, to file a properly supported fee petition and a bill of costs. The Trustees have until November 1, 2018, to file the opposition, if any.

5. The Trustees must reimburse the Trust for the legal fees paid to Kallina and his law firm. The parties must confer in an attempt to reach agreement on the amount of fees. In the absence of agreement, the Federation should submit its proposal by

October 18, 2018, and the Trustees have until November 1, 2018, to file their opposition.

6. The parties must confer on an institutional trustee to fill the Independent Trusteeship. In the absence of agreement, the parties must submit their proposed institutional trustees to the court by October 18, 2018.

7. The Trustees have until October 18, 2018, to inform the court of the Melvin S. Cohen Foundation's selection of a successor to the Cohen Family Trusteeship.

8. The court will forestall the removal of the Trustees and entering judgment until the outstanding issues involving remedies are resolved.

Entered September 28, 2018.

BY THE COURT:

/s/
_____

JAMES D. PETERSON
District Judge